## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| INDEPENDENCE FEDERAL SAVINGS BANK, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) )   Civil Action No. 04-736 (RMC) |
| MORTON A. BENDER, *et al.*, | ) ) ) |
| Defendants. | ) ) ) |

### MEMORANDUM OPINION

Independence Federal Savings Bank ("IFSB" or "Bank"), a minority-owned financial institution in Washington, D.C., has had a difficult few years.[1]  In November 2003, IFSB's federal regulator, the Office of Thrift Supervision ("OTS"), labeled the bank "troubled" after allegations of mismanagement arose in connection with financial improprieties at the Washington Teachers' Union.  For relief, the Bank sought to merge with Carver Federal Savings Bank, a subsidiary of Carver Bancorp, Inc. ("Carver").  Morton A. Bender, a major shareholder of the Bank, opposed the Carver merger proposal and sought to block it by increasing his holdings of Bank shares.  In response, the Bank adopted a Shareholder Rights Plan (known as a "poison pill"), which effectively prevented Mr. Bender from increasing his holdings.  The Bank then sued him for alleged violations of Section 13(d) of the Securities Exchange Act of 1934 ("Exchange Act"), as added by Section 2 of the Williams Act, 15 U.S.C. § 78m(d).  The Bank also alleged that Mr. Bender tortiously

---

[1]  The background to the current dispute is set out in full in *Independence Fed. Sav. Bank v. Bender*, 326 F. Supp. 2d 36 (D.D.C. 2004) (*Bender I*) and *Independence Fed. Sav. Bank v. Bender*, 332 F. Supp. 2d 203 (D.D.C. 2004) (*Bender II*), and will not be repeated here.  *See also Bender v. Parks*, No. 03-2485, 2004 U.S. Dist. LEXIS 17090 (D.D.C. Jan. 15, 2004).

interfered with IFSB's merger agreement with Carver and caused two members of the Bank's Board

of Directors, Nelson Deckelbaum and Elliott Hall, to breach their duties of loyalty to IFSB.

After a dispute over the purchase price, the merger with Carver collapsed.[2]  With no

merger to protect, the Bank's Board of Directors accelerated and terminated the Shareholder Rights

Agreement and moved for voluntary dismissal of this action without prejudice.[3] Mr. Bender opposes

voluntary dismissal and seeks sanctions against the Bank.  He has also filed a motion for summary

judgment, which the Court has stayed until the motion to dismiss and the motion for sanctions can

be adjudicated.

## ANALYSIS

A.    Motion to Dismiss Under Rule 41(a)(2)

The Bank moves for voluntary dismissal without prejudice pursuant to Rule 41(a)(2)

of the Federal Rules of Civil Procedure:

> [A]n action shall not be dismissed at the plaintiff's instance save upon order
> of the court and upon such terms and conditions as the court deems proper.
> If a counterclaim has been pleaded by a defendant prior to the service upon
> the defendant of the plaintiff's motion to dismiss, the action shall not be
> dismissed against the defendant's objection unless the counterclaim can
> remain pending for independent adjudication by the court.   Unless
> otherwise specified in the order, a dismissal under this paragraph is without
> prejudice.

FED. R. CIV. P. 41(a)(2).  "The decision to grant or deny this motion rests in the sound discretion of

the trial court," *La Gon v. Barry*, 658 F. Supp. 55, 60 (D.D.C. 1987) (citing *Cone v. West Virginia*

---

[2]  The OTS had viewed the merger with some skepticism and formally rejected it in
October 2004.

[3]  The Bank also filed a motion to dismiss Mr. Bender's cross-claims against it as moot.
By consent of the parties, the Court granted the motion on December 17, 2004.

*Paper Co.*, 330 U.S. 212, 217 (1947)), and "[c]ourts generally grant voluntary dismissals 'unless the defendant would suffer prejudice other than the prospect of a second lawsuit or some tactical advantage,'" *Piedmont Resolution v. Johnston, Rivlin, & Foley*, 178 F.R.D. 328, 331 (D.D.C. 1998) (quoting *Conafay v. Wyeth Labs.*, 793 F.2d 350, 353 (D.C. Cir. 1986)).

       In making this decision, the "Court must determine: (1) whether plaintiff['s] motion for voluntary dismissal was sought in good faith; and (2) whether the defendant[] would suffer 'legal prejudice' from a dismissal at this stage in the litigation." *In re Vitamins Antitrust Litig.*, 198 F.R.D. 296, 305 (D.D.C. 2000). "In determining whether a defendant would suffer legal prejudice by a voluntary dismissal . . . the Court must consider: (1) the defendant['s] effort and expense for preparation of trial; (2) excessive delay or lack of diligence on the plaintiff['s] part in prosecuting the action; (3) the adequacy of plaintiff['s] explanation of the need for dismissal; and (4) the stage of the litigation at the time the motion to dismiss is made, specifically whether a motion for summary judgment is pending." *Id.* (citing *FDIC v. Knostman*, 966 F.2d 1133, 1142 (7th Cir. 1992) and *Piedmont Resolution*, 178 F.R.D. at 331).

       Voluntary dismissals pursuant to Rule 41(a)(2) are to be granted under such "terms and conditions" as the Court deems appropriate. FED. R. CIV. P. 41(a)(2). "The purpose of the 'terms and conditions' clause is to protect a defendant from any prejudice or inconvenience that may result from a plaintiff's voluntary dismissal. Attorneys' fees and costs are commonly awarded as one such 'term and condition' for a voluntary dismissal, for those costs were undertaken unnecessarily in such a case." *GAF Corp. v. Transamerica Ins. Co.*, 665 F.2d 364, 367 (D.C. Cir.1981).

       The Bank is quite candid about its position. Although the Court declined to grant a preliminary injunction, the Bank argues that its complaint has merit and that the dismissal it seeks

should be without prejudice because "any IFSB shareholder would in fact be entitled to pursue these claims, derivatively on behalf of the Bank. . . . It would work a potentially serious injustice to these independent shareholders if the Bank, without notice to them, were to abandon its claims against Bender with prejudice." Plaintiff Independence Federal Savings Bank's Motion Pursuant to F.R.C.P. 41(a)(2) for Voluntary Dismissal of its Claims Against Morton A. and Grace M. Bender Without Prejudice ("Bank Mem.") at 6. In a bit of hyperbole, the Bank argues that it "commenced this action to protect the legitimate interests of its shareholders and to protect the merger agreement with Carver against the effects of Bender's *illegal* actions" but that now "the costs and risks of litigation outweigh the potential benefits." *Id.* at 7 (emphasis added).

The Court does not doubt the Bank's good faith in moving for dismissal without prejudice. Although several motions have been filed, contested, and decided, events have now mooted the Bank's claims. The Bank did not delay in seeking dismissal, filing its motion soon after OTS nixed the Carver merger and the Bank terminated the merger agreement and the Shareholder Rights Plan. Nor does the Court question the Bank's determination that the costs and risks render this litigation inadvisable at this time. These findings, however, do not end the inquiry because the Court must consider the legal prejudice to the defendant if dismissal is granted.

In contrast to *Nixon Constr. Co. v. Frick Co.*, 45 F.R.D. 387 (S.D.N.Y. 1968), upon which the Bank relies, the parties here are *beyond* the eve of trial, given the various motions filed, the extensive discovery conducted, and the detailed findings of the Court following the preliminary injunction hearing.[4] As a result, Mr. Bender estimates that he has spent approximately $435,000

---

[4] *See Nixon*, 45 F.R.D. at 389-90.

> [T]here [had] been no additional pleadings or proceedings other than
> plaintiffs' motion to enjoin defendant from prosecuting other suits until

in attorney's fees and expenses in litigating this case between May 2004, when the Bank sued him, and December 31, 2004. Bender Opposition to Motion for Voluntary Dismissal ("Bender Opp'n") at 12. Furthermore, a motion for summary judgment is pending – a motion that could conceivably dispose of this case altogether. *C.f. Gossard v. Washington Gas Light Co.*, 217 F.R.D. 38, 42 (D.D.C. 2003) ("[T]he pendency of a motion for summary judgment is not sufficient reason, standing alone, to deny a plaintiff's motion for voluntary dismissal.").[5]

        The reasons for dismissal of this case are sound. This litigation has been about control of the future of IFSB. In the opening salvo, Mr. Bender sued to force a special meeting of shareholders and replace most of the Board. This effort was unsuccessful. *See Bender v. Parks*, No.

---

        the determination of this action. The only time spent by this Court on the matter has been an oral argument and a review of papers . . . . [N]o proof was taken nor facts stipulated that would permit findings or conclusions of the type found in . . . *Bowles v. South Pittsburg Coal Co.*, 7 F.R.D. 139 (E.D. Tenn. 1945)


[5] Noting that a pending summary judgment motion could forestall a voluntary dismissal without prejudice, Mr. Bender attacks the *bona fides* of the Bank's motion. At a status hearing before the Court on November 10, 2004, Mr. Bender informed the Court and the Bank that he was preparing a motion for summary judgment. The Bank asked leave to report back on the decisions made by its Board of Directors concerning continuation of this litigation until after a Board meeting scheduled for November 17, 2004. Leave was granted by the Court and the Bank was directed to file a status report on December 1. Mr. Bender was granted leave to file a response on December 7, and a follow-up status conference was set for December 17, 2004. On December 1, 2004, the Bank filed its motion to dismiss instead of a status report. "Counsel for the Benders were genuinely surprised by the Bank's filing, as the Court's status report/status conference procedure did not seem to contemplate additional motions practice." Bender Opp'n at 9 n.6. Mr. Bender suggests that the Bank's surprise filing was timed to avoid the consequences of a pending motion for summary judgment. He asks the Court to consider the motion as a factor counseling against dismissal without prejudice. The motion addresses Count I of the amended complaint, relating to the Schedule 13(d) filings. While the Court does not question the Bank's good faith, it understands Mr. Bender's situation and has considered the pending motion in connection with the Bank's motion to dismiss.

03-2485, 2004 U.S. Dist. LEXIS 17090 (D.D.C. Jan. 15, 2004). The Bank thereafter adopted the

Shareholder Rights Plan and began the instant suit. Mr. Bender sought an injunction against the

Shareholder Rights Plan, which was preventing him from buying additional Bank stock. This effort

was unsuccessful. *Bender I*, 326 F. Supp. 2d at 49-50. The Bank then sought an order "neutralizing"

the shares Mr. Bender had purchased "since the date the Board announced the Carver merger. This

would [have caused] eight percent (8%) of the outstanding shares of the Bank, *i.e.*, those acquired

by Mr. Bender after March 15, 2004, to be voted on the Carver merger question in the same

proportion as all other votes." *Bender II*, 332 F. Supp. 2d at 204. This effort was also unsuccessful.

It is apparent that these parties entered this fray for business purposes. Those purposes are no longer

present and it will do little good to require that this action proceed.

Despite the briefing on this issue, the conditions under which dismissal should be

permitted remain illusive. Mr. Bender asserts that, if the Court grants the motion to dismiss it should

be with prejudice or the Bank should be forced to pay his legal fees and costs because "it is unclear

whether new litigation will be instituted; thus, in the absence of a dismissal *with prejudice*, the

entirety of Benders' defense of the 13-D claims may be wasted." Bender Opp'n at 12. *See Gossard*,

217 F.R.D. at 42 & n.7 (granting motion to dismiss conditioned upon payment of attorney's fees,

which plaintiff could avoid by withdrawing his motion). However, contrary to Mr. Bender's

assertion, he did not incur expenses "unnecessarily." It is evident that the Bank is not dismissing its

claims for tactical advantage. Rather, the termination of the merger "eliminated the principle [sic]

goal of IFSB's action, the preservation and protection of the proposed transaction, and has mooted

entirely IFSB's efforts to obtain injunctive relief designed to achieve this goal." Bank Mem. at 3.

That events overtook the Bank's litigation does not render its earlier efforts, and Mr. Bender's

defense, unnecessary. Still, the prospect of subsequent litigation by shareholders looms. A dismissal without prejudice could shortcut Mr. Bender's efforts to bring this litigation to a close, despite significant expenditures of time and money, while leaving open the prospect of future litigation.

Under such circumstances, the Court will deny the motion to dismiss without prejudice. The Court will set a status conference to discuss the appropriate disposition of the case. Either at the status conference or in a filing prior thereto, the Bank shall notify the Court of its intention to: 1) proceed with the case; 2) move for dismissal without prejudice with an award of legal fees to Mr. Bender; or 3) move for dismissal with prejudice. The motion for summary judgment will be held until after the status conference.

### B.    Motion for Sanctions

Mr. Bender filed a motion for sanctions against the Bank in November 2004 under Rule 11 of the Federal Rules of Civil Procedure. Although he asserts that he is procedurally in compliance with Rule 11, Mr. Bender observes that, regardless of his compliance, the Court has a statutory obligation under the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(c), to assess the record for Rule 11(b) violations. Bender Reply to IFSB's Opposition to Motion for Rule 11 Sanctions ("Bender Sanctions Reply") at 2.

### 1.    *Rule 11*

Under Rule 11 of the Federal Rules of Civil Procedure, a court may sanction those who, under certain circumstances, "abuse or misuse the litigation process." *Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1179 (D.C. Cir. 1985). The rule serves "to deter baseless filings in District Court and thus . . . streamline the administration and procedure of the federal courts," *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990), by "requir[ing] litigants to 'stop-and-think' before

initially making legal or factual contentions," FED. R. CIV. P. 11 advisory committee's notes (1993).

Rule 11 provides, in pertinent part, that a lawyer, by signing a pleading, certifies "to the best of the

person's knowledge, formed after an inquiry reasonable under the circumstances," that, among other

things, the allegations have legal and evidentiary support. FED. R. CIV. P. 11(b)(2) and (3). Where

a plaintiff makes a factual allegation without evidentiary support, and without the prospect of

obtaining such support, sanctions may be appropriate. *See Clinton v. Jones*, 520 U.S. 681, 709 n.42

(1997).[6]

Mr. Bender argues that Count I of the amended complaint – that Mr. Bender violated

the securities laws by filing Schedule 13Ds with false or incomplete information – is "both factually

and legally without support and . . . thus in violation of Rule 11." Bender Motion for Rule 11

Sanctions ("Bender Sanctions Mem.") at 8. Mr. Bender also attacks the factual and legal bases for

Counts II and III.[7]

Rule 11 has two procedural requirements. First, "[a] motion for sanctions under this

rule shall be made separately from other motions . . . ." FED. R. CIV. P. 11(c)(1)(A). Second, "it

shall be served as provided in Rule 5 but shall not be filed with or presented to the court unless,

within 21 days after the service of the motion (or such other period as the court may prescribe), the

---

[6] The 1993 amendments to Rule 11 softened the requirement that a district court impose sanctions once a violation is found, giving the court discretion on whether to levy sanctions. *See Kirk Capital Corp. v. Bailey*, 16 F.3d 1485, 1487 (8th Cir. 1994) (comparing the 1983 and 1993 amendments and a rule change from "shall impose" to "may . . . impose" sanctions); FED. R. CIV. P. 11 advisory committee's notes (1993) ("The court has significant discretion in determining what sanctions, *if any*, should be imposed for a violation . . . .") (emphasis added).

[7] Mr. Bender's arguments regarding Counts II and III are somewhat disjointed because he drafted the motion before the amended complaint was filed. The Bank dropped Messrs. Hall and Deckelbaum as defendants from the amended complaint, but Mr. Bender's motion does not reflect this fact.

challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected." *Id*.

On June 7, 2004, Mr. Bender served a "file ready" copy of his motion and memorandum on the Bank. IFSB filed its First Amended Complaint on July 8, 2004, more than 21 days after Mr. Bender's service of his motion for sanctions. Mr. Bender did not actually file the motion for sanctions until November 2004. The Bank argues that Rule 11 required Mr. Bender to serve a second "file ready" copy of a Rule 11 motion to attack the First Amended Complaint and that he is now procedurally barred from advancing his arguments. Mr. Bender points to the great similarities between the original complaint and the amended complaint and argues that he had no obligation to serve a second notice.

The Court declines to rest its decision on procedural niceties which, in this case, are very close. Rather, it finds that the Bank's amended complaint was not so frivolous that it was "patently clear" that it "had absolutely no chance of success under the existing precedents and [that] no reasonable argument [could] be advanced to extend, modify or reverse the law as it stands." *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir. 1985). *See also United States v. Gilbert*, 198 F.3d 1293, 1299 (11th Cir. 1999) (sanctions are appropriate if a pleading is so "frivolous" as to be "groundless . . . with little chance of success"). The evidence after a three-day preliminary injunction hearing indicates that the Bank's amended complaint is without merit, but that is a preliminary finding. Certainly, the Bank had no obligation to credit Mr. Bender's SEC filings fully and to drop its lawsuit simply because he clarified the positions of Board Members Deckelbaum and Hall after the initial complaint here was filed.

Again, this has been a hard fight for control of the Bank. Advocacy on both sides has

occasionally risen to the boiling point, although the lawyers are to be commended for their civility in the midst of heavy battle. Each side marshaled such legal arguments as it could bring to bear, without much success. Neither side deserves sanctions under Rule 11.

2. *Private Securities Litigation Reform Act*

"Ordinarily, courts are under no particular obligation to make findings with regard to the compliance of litigants and their counsel with Rule 11 or to impose sanctions once a violation is found. . . . This is no longer the case, however, in the securities litigation context." *Simon DeBartolo Group v. Richard E. Jacobs Group, Inc.*, 186 F.3d 157, 167 (2d Cir. 1999) (discussing H.R. Conf. Rep. No. 104-369, at 39 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730). Because amendments in 1993 had rendered Rule 11 discretionary, Congress passed legislation "requiring courts, at the conclusion of all private actions arising under the Exchange Act, to make specific findings as to the compliance by all parties and attorneys with [Rule 11(b)]" and requiring that a court "impose sanctions if it determines the rule has been violated." *Id. See Gurary v. Winehouse*, 235 F.3d 792, 797 (2d Cir. 2000) (PSLRA does not alter substantive standards but circumscribes judicial discretion in choosing to conduct the Rule 11 analysis and in imposing sanctions). Thus, even if Mr. Bender's motion for sanctions were procedurally defective, the statutory requirement to consider sanctions under the PSLRA still exists. Specifically, the sanctions provision of the PSLRA states, in pertinent part:

(1) Mandatory review by court

In any private action arising under this chapter, upon final adjudication of the action, the court shall include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion.

(2) Mandatory sanctions

If the court makes a finding under paragraph (1) that a party or attorney violated any requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion, the court shall impose sanctions on such party or attorney in accordance with Rule 11 of the Federal Rules of Civil Procedure.  Prior to making a finding that any party or attorney has violated Rule 11 of the Federal Rules of Civil Procedure, the court shall give such party or attorney notice and an opportunity to respond.

15 U.S.C. § 78u-4(c).

Mr. Bender alleges a violation in the Bank's Opposition to his Rule 11 motion, where IFSB states that he has "illegally withheld" from the Bank's shareholders the reasons behind the OTS July 16, 2004 letter forbidding him from acquiring more stock or advancing a slate of directors for the Bank.  Bender Sanctions Reply at 3-4.  IFSB also argues that Mr. Bender's arguments that he did not violate Section 13(d) were "ludicrous" because he filed a disclosure affirming that he had sent a letter that was, in fact, never sent due to a mis-communication between Mr. Bender and his counsel.

The PSLRA requires compliance by "each party and each attorney" with Rule 11(b) in submitting "any complaint, responsive pleading, or dispositive motion." 15 U.S.C. § 78u-4(c)(1).  Rule 11(b) states that by presenting a pleading or other paper to the court, a lawyer is certifying that:

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or

-11-

belief.

FED. R. CIV. P. 11(b).  Despite the turmoil of this extended litigation, the Court finds that nothing in the filings of either party violates Rule 11(b).

This suit was brought to promote the unanimity of the Board of Directors, to enable it to proceed with the Carver merger, and to protect the Shareholder Rights Plan.  The allegations in the initial complaint were not frivolous; the Court understands and credits the sense of peril under which the Bank was operating and that caused confusion as to the positions of Messrs. Deckelbaum and Hall.  The allegations in the amended complaint might appear less than robust in the light of discovery and testimony at the preliminary injunction hearing, but it cannot be said that this result was evident when the amended complaint was filed or that dismissal of all allegations would be foreordained if there were to be full discovery and briefing.  Enthusiastic advocacy (and the desire to avoid sanctions) may have resulted in exaggerated statements in the Bank's last brief in opposition to this Rule 11 motion, but not so exaggerated as to warrant sanctions.[8]  Therefore, because the Court finds that the complaint and all subsequent pleadings and motions were properly motivated, neither party violated Rule 11(b) during the course of this litigation.

---

[8] Rule 11 is not meant to chill advocacy or in any way stymie the freedom to litigate creatively and vigorously; rather, it provides standards that a district court may use to determine when "the line between creative and vigorous representation, on the one hand, and frivolousness and harassment, on the other, is crossed . . . ."  *Trout v. Garrett*, 780 F. Supp. 1396, 1429 (D.D.C. 1991).

**CONCLUSION**

The Court thanks both counsel for their excellent briefs and continued civility despite the vigor of this litigation and the occasional exaggeration. For the reasons stated, the Court denies the motion to dismiss without prejudice. The Court will set a status conference to discuss the appropriate disposition of the case. Either at the status conference or in a filing prior thereto, the Bank shall notify the Court of its intention to: 1) proceed with the case; 2) move for dismissal without prejudice with an award of legal fees to Mr. Bender; or 3) move for dismissal with prejudice. The motion for summary judgment will be held until after the status conference. Mr. Bender's motion for sanctions is denied. A separate order accompanies this memorandum opinion.

DATE: July 19, 2005. /s/_____

ROSEMARY M. COLLYER
United States District Judge

-13-